Spencer v Spencer (2018 NY Slip Op 01348)





Spencer v Spencer


2018 NY Slip Op 01348


Decided on February 28, 2018


Appellate Division, Second Department


Duffy, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 28, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
L. PRISCILLA HALL
SANDRA L. SGROI
COLLEEN D. DUFFY, JJ.


2016-12961
 (Index No. 50663/12)

[*1]Sharon Marie Spencer, respondent, 
v
Dwayne Spencer, appellant.



APPEAL by the defendant, in an action for divorce and ancillary relief, as limited by his brief, from so much of an order of the Supreme Court (Catherine M. DiDomenico, J.), dated November 18, 2016, and entered in Richmond County, as, after a hearing, granted that branch of the plaintiff's motion which was to hold him in civil contempt for his violation of certain orders that had been issued during the pendency of the action and directed his incarceration unless he paid a purge amount of $150,000 by December 16, 2016. By decision and order on motion dated February 2, 2017, this Court stayed enforcement of so much of the order as directed the defendant's incarceration unless he paid the purge amount by December 16, 2016, pending hearing and determination of the appeal.



Jay S. Baum, Staten Island, NY, for appellant.
Agulnick & Gogel, LLC, Great Neck, NY (William A. Gogel of counsel), for respondent.



DUFFY, J.


OPINION & ORDER
This case presents two issues of first impression in the area of matrimonial law not previously addressed by an appellate court in New York. The first issue is whether the provisions of Domestic Relations Law § 236(B)(2)(b) and Uniform Rules for Trial Courts (22 NYCRR) § 202.16-a, in tandem (hereinafter together the automatic orders), constitute unequivocal mandates of the court for the purposes of holding a party in civil contempt pursuant to Judiciary Law § 753. If so, then the next issue is whether such civil contempt is an available remedy for a violation of the automatic orders when that civil contempt is sought after entry of a judgment of divorce. For the reasons set forth below, we answer the first issue in the affirmative and the second in the negative. Specifically, we find that the automatic orders constitute unequivocal mandates of the court, but civil contempt is not an available remedy for violation of the automatic orders when civil contempt is sought after entry of a judgment of divorce.
Sharon Marie Spencer (hereinafter the plaintiff) commenced this matrimonial action in the Supreme Court, Richmond County, against her husband, Dwayne Spencer (hereinafter the defendant), on July 18, 2012. An 18-day trial was held, and thereafter, on November 30, 2015, a judgment of divorce was entered.
After the judgment of divorce had been entered, the plaintiff learned that, while the trial was pending, unbeknownst to her, the defendant sold a warehouse in Brooklyn, which was a marital asset (hereinafter the Property), without her consent and without the consent of the Supreme Court during the pendency of the action.
At the time the defendant sold the Property, both Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR 202.16-a were in full force and effect. As is relevant to this appeal, each provision, with language that virtually mirrors the other, precludes either of the parties in a matrimonial action from transferring or in any way disposing of marital assets such as the Property without the written consent of the other party or order of the court, except under certain circumstances not applicable to this case (see Domestic Relations Law § 236[B][2][b]; 22 NYCRR 202.16-a). The automatic orders are binding upon a plaintiff upon commencement of the matrimonial action and upon a defendant upon service of the summons or summons and complaint (see Domestic Relations Law § 236[B][2][b]).
Although the judgment of divorce had already been entered, as a result of the plaintiff's discovery of the defendant's earlier sale of the Property, on July 29, 2016, the plaintiff filed an order to show cause seeking, inter alia, pursuant to Judiciary Law § 753, a finding of civil contempt against the defendant. The Supreme Court then held a hearing on the plaintiff's order to show cause, during which the defendant admitted that he sold the Property for $1.6 million during the pendency of the divorce trial. The defendant asserted that, after paying the mortgage and other encumbrances on the Property, he received proceeds from the sale in the amount of $300,000, which he spent paying debts that he owed.
In an order dated November 18, 2016, the Supreme Court, inter alia, granted that branch of the plaintiff's motion which was to hold the defendant in civil contempt, finding the defendant's sale of the Property in violation of the automatic orders and his expenditure of the proceeds for his own benefit defeated, impaired, impeded, or prejudiced the rights of the plaintiff. The court directed that, unless the defendant purged the contempt by paying $150,000 to the plaintiff on or before December 16, 2016, the defendant would be incarcerated every weekend for a period of six months. The defendant appeals from so much of the order as held him in civil contempt and directed him to be incarcerated if the purge amount was not timely paid. In a decision and order on motion dated February 2, 2017, this Court stayed enforcement of so much of the order as directed his incarceration if the purge amount was not timely paid.
I. The Law of Civil Contempt
The goal of civil contempt is to vindicate a party's right to the benefits of a judicial mandate or to compensate that party for the interference by the contemnor (see Matter of McCormick v Axelrod, 59 NY2d 574, 582-583). In order to adjudicate a party in civil contempt, a court must find: (1) that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect, (2) that the party against whom contempt is sought disobeyed the order, (3) that the party who disobeyed the order had knowledge of its terms, and (4) that the movant was prejudiced by the offending conduct (see id. at 583; El-Dehdan v El-Dehdan, 26 NY3d 19, 29; Bernard-Cadet v Gobin, 94 AD3d 1030, 1031; see also Judiciary Law § 753[A][1]). The party seeking a finding of civil contempt must prove these elements by clear and convincing evidence (see El-Dehdan v El-Dehdan, 26 NY3d at 29). Upon a determination that a party has committed civil contempt, the court may impose as a punishment a fine in an amount sufficient to indemnify the aggrieved party for an actual loss, including counsel fees, and/or imprisonment for up to six months or until the fine is paid (see Judiciary Law §§ 773, 774).
As noted above, the language of Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR 202.16-a is virtually identical. Domestic Relations Law § 236(B)(2)(b) provides, in pertinent part, as follows:
"The automatic orders shall remain in full force and effect during the pendency of the action, unless terminated, modified or amended by further order of the court . . . . The automatic orders are as follows:
"(1) Neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of, without the consent of the other party in writing, or by order of the court, any property (including, but not limited to, real estate, . . .) individually or jointly held by the parties, except in the usual course of business, for customary and usual household expenses or for reasonable attorney's fees in connection with this action."
22 NYCRR 202.16-a provides, in pertinent part:
"(c) Automatic Orders. Upon service of the summons in every [*2]matrimonial action, it is hereby ordered that:
"(1) Neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of, without the consent of the other party in writing, or by order of the court, any property (including, but not limited to, real estate, . . .) individually or jointly held by the parties, except in the usual course of business, for customary and usual household expenses or for reasonable attorney's fees in connection with this action."
Domestic Relations Law § 236(B)(2)(b) was enacted by the New York State Legislature in 2009, and 22 NYCRR 202.16-a is a court rule adopted in 2009 by the Chief Administrative Judge that governs the conduct of parties in a matrimonial litigation. Neither provision constitutes a specific pronouncement by an individual court or judge. And, as an initial matter, we note that, although there may be a case in which, perhaps due to a deficiency in the pleadings, a court would need to delineate between the two provisions, despite their virtually identical language, no such issue exists here. In her order to show cause, the plaintiff alleged that the defendant violated both Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR 202.16-a. Accordingly, we treat the two provisions, together, as the automatic orders.
II. Unequivocal Mandates of the Court
Turning to the issue of whether these automatic orders constitute unequivocal mandates of the court during the pendency of a matrimonial action, although neither the Court of Appeals nor any appellate court has yet addressed this issue, the legislative history of Domestic Relations Law § 236(B)(2)(b) supports the conclusion that the automatic orders constitute unequivocal mandates of the court (see Mem in Support of 2009 NY Assembly Bill A2574, Bill Jacket, L 2009, ch 72; Sponsor's Mem in Support, 2009 NY Senate Bill S2970). There can be no real dispute that the Legislature intended that a violation of the automatic orders "would be redressed by the same remedies available for violations of any order signed by a judge" (P.S. v R.O., 31 Misc 3d 373, 376 [Sup Ct, NY County]). Indeed, the introductory language of 22 NYCRR 202.16-a expressly provides that a charge of contempt is available as a remedy for a party's violation of the automatic orders during the pendency of a matrimonial action:
"The notice shall state legibly on its face that automatic orders have been entered against the parties named in the summons or in the summons and complaint pursuant to this rule, and that failure to comply with these orders may be deemed a contempt of court. The automatic orders shall be binding upon the plaintiff immediately upon filing of the summons, or summons and complaint, and upon the defendant immediately upon service of the automatic orders with the summons. These orders shall remain in full force and effect during the pendency of the action unless terminated, modified or amended by further order of the court or upon written agreement between the parties" (22 NYCRR 202.16-a[b] [emphasis added]).
As noted in the Assembly's Memorandum in Support of Legislation, the automatic orders are needed at the very commencement of and during the pendency of a matrimonial action "to prevent both parties from dissipating assets, incurring unreasonable debts, or removing a party or the children from health or life insurance policies" (Mem in Support of 2009 NY Assembly Bill A2574, Bill Jacket, L 2009, ch 72 at 6; see Sponsor's Mem in Support, 2009 NY Senate Bill S2970). Public policy concerns compel our conclusion that the automatic orders are unequivocal mandates that, upon proper proof, can be enforced through resort to the remedy of contempt of court. Such determination gives teeth to both Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR 202.16-a, as the spectre of being held in contempt can be a powerful deterrent to misconduct by the parties, as well as a valuable tool to induce compliance with and enforcement of the terms of the automatic orders during the pendency of the matrimonial action.
Certain Supreme Court cases that have dealt with civil contempt motions that have been made during the pendency of a matrimonial action also have concluded that the automatic orders constitute unequivocal mandates of the court for the purposes of seeking a remedy of civil [*3]contempt (see Westreich v Westreich, 44 Misc 3d 1217[A], 2014 NY Slip Op 51170[U], *16-17 [Sup Ct, Nassau County]; Sykes v Sykes, 35 Misc 3d 591, 595 [Sup Ct, NY County]; P.S. v R.O., 31 Misc 3d at 376). For example, in P.S. v R.O. (31 Misc 3d at 376), the court reasoned that 22 NYCRR 202.16-a, which has language identical to that set forth in Domestic Relations Law § 236(B)(2)(b), is a lawful mandate of the court. In concluding that the court rule constitutes an unequivocal mandate of the court, the court observed that
"[t]he court rules are promulgated by the Chief Administrator of the Courts on behalf of the Chief Judge of the Court of Appeals under the authority vested in them by Judiciary Law § 211(1)(b) and 212(2)(b), and by article VI, § 30 of the New York State Constitution, to adopt rules to regulate practice and procedure in the courts. Thus, the court rules constitute lawful mandates of the court" (P.S. v R.O., 31 Misc 3d at 376).
The defendant's contention that Domestic Relations Law § 236(B)(2)(b) constitutes a legislative, not a court, mandate (see e.g. Buoniello v Buoniello, 2010 NY Misc. LEXIS 6641 [Fam Ct, Suffolk County]), precluding civil contempt as a remedy for a violation of that section, ignores the existence of 22 NYCRR 202.16-a. A party cannot violate Domestic Relations Law § 236(B)(2)(b) without also violating 22 NYCRR 202.16-a; the two provisions essentially mirror each other. Indeed, we note that, as a matter of course, that section of the Domestic Relations Law and 22 NYCRR 202.16-a each are referred to as "the automatic orders" and are treated in tandem with each other. And, as noted herein, the defendant's contention that the automatic orders are not unequivocal mandates subjecting him to civil contempt, but rather constitute administrative rules, is contrary to the express language of 22 NYCRR 202.16-a, against public policy, and without merit.
III. The Unavailability of Civil Contempt as a Postjudgment Remedy
Notwithstanding the foregoing, we find that, in a case such as this one where a judgment of divorce has already been entered, the remedy of civil contempt is not available for a violation of the automatic orders after the judgment of divorce has been entered. "[I]n the context of a matrimonial action, the Court of Appeals has recognized that a final judgment of divorce settles the parties' rights pertaining not only to those issues that were actually litigated, but also to those that could have been litigated'" (Nicodemus v Nicodemus, 124 AD3d 849, 851, quoting Xiao Yang Chen v Fischer, 6 NY3d 94, 100). "The primary purposes of res judicata are grounded in public policy concerns and are intended to ensure finality, prevent vexatious litigation and promote judicial economy" (Xiao Yang Chen v Fischer, 6 NY3d at 100). In contrast, the automatic orders are temporary and exist only "in full force and effect" during the pendency of the action until "terminated, modified or amended by further order of the court or upon written agreement between the parties" (22 NYCRR 202.16-a[b]).
The express purpose of the automatic orders is to preserve the status quo of property individually or jointly held by the parties, by prohibiting the transfer or encumbrance of real and personal property and retirement funds, the accumulation of unreasonable debt, and changes in beneficiaries on existing health and life insurance policies during the pendency of the action (see Domestic Relations Law § 236[B][2][b]). Upon entry of a judgment of divorce, the purpose of the automatic orders ends, and, when the life of the automatic orders thus expires, the statutory remedies for their enforcement fall at the same time (see Mittman v Mittman, 263 App Div 384, 385). Here, after the judgment of divorce was entered, the automatic orders ceased to exist for the purposes of enforcement (see 22 NYCRRR 202.16-a) given that the judgment of divorce was the final determination of the action and, along with legally ending the marriage of the parties, disposed of all outstanding issues relating to the division of the parties' property, the award of maintenance, child custody, and other marital issues (see Nicodemus v Nicodemus, 124 AD3d at 851).
Public policy concerns recognizing the finality of judgments are additional reasons to find that, after a judgment of divorce is entered, a party is not entitled to pursue a motion for contempt of court for a late-discovered violation of the automatic orders even though such violation occurred during the pendency of the divorce action. Preventing vexatious litigation and promoting judicial economy, as well as the goal of avoiding inconsistent rulings where a judgment of divorce might actually conflict with the finding in a hearing on a violation of the automatic orders, also dictate the conclusion that a remedy of civil contempt is not available for a violation of the automatic orders once a judgment of divorce is entered (see Xiao Yang Chen v Fischer, 6 NY3d at 100; [*4]Nicodemus v Nicodemus, 124 AD3d at 851). Indeed, the public policy concerns that favor allowing a motion for contempt of court as a remedy for violating the automatic orders during the pendency of a matrimonial action, to wit, "to prevent both parties from dissipating assets, incurring unreasonable debts, or removing a party or the children from health or life insurance policies" (Mem in Support of 2009 NY Assembly Bill A2574, Bill Jacket, L 2009, ch 72; see Sponsor's Mem in Support, 2009 NY Senate Bill S2970), no longer exist after the judgment of divorce ends the marriage and itself becomes the mechanism to enforce.
We note that, in a comparable context, even though the Legislature has enacted and revised matrimonial statutes with the express purpose of enabling easier enforcement of support orders such as pendente lite orders of maintenance and child support (see Domestic Relations Law § 236[B]), this Court has held that, after entry of a judgment of divorce, the remedy of civil contempt to enforce an alleged violation of a pendente lite order of maintenance is not available, as there are other available remedies for enforcing such orders (see Pollack v Pollack, 3 AD3d 482, 484). Specifically, in that context, relief is available through the application to the court for a money judgment pursuant to Domestic Relations Law § 244, or for a violation of the judgment of divorce, if applicable (see Pollack v Pollack, 3 AD3d at 484; Walis v Walis, 192 AD2d 598, 600-601; Patricia Lynn N. v Vincent Michael N., 152 AD2d 547, 548).
Likewise, here, the unavailability of civil contempt as a remedy to enforce the terms of the automatic orders after the entry of the judgment of divorce does not render this plaintiff without available remedies. For example, vacatur of the judgment of divorce based on newly discovered evidence, a civil contempt motion for a violation of the judgment of divorce, a proceeding to enforce the terms of the judgment of divorce or to obtain an order directing the payment of 50% of the value of the Property which was awarded to the plaintiff in the judgment of divorce, or amendment of the judgment of divorce are all remedies that the plaintiff could have sought (see Iacono v Iacono, 145 AD3d 972, 974; Pantelidis v Pantelidis, 297 AD2d 791, 792; see also Nicodemus v Nicodemus, 124 AD3d at 851).
IV. Conclusion
Accordingly, although we find that the automatic orders constitute unequivocal mandates for the purposes of holding a party in civil contempt, under the circumstances of this case, the Supreme Court erred in granting that branch of the plaintiff's motion which was to hold the defendant in civil contempt and directing his incarceration unless he paid a purge amount. Thus, the order is reversed insofar as appealed from, on the law, and that branch of the plaintiff's motion which was to hold the defendant in civil contempt is denied.
MASTRO, J.P., HALL and SGROI, JJ., concur.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the plaintiff's motion which was to hold the defendant in civil contempt is denied.
ENTER:
Aprilanne Agostino
Clerk of the Court